SEYFARTH SHAW LLP
M. Ryan Pinkston
rpinkston@seyfarth.com
560 Mission Street, 31st Floor
San Francisco, California 94105
Telephone: (415) 544-1013
Facsimile: (415) 397-8549

Attorneys for Defendant
Bell-Carter Foods, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH DURHAM, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BELL-CARTER GROUP, INC. and BELL-CARTER FOODS, LLC d/b/a BELL-CARTER FOODS,<br><br>Defendants. | Case No.<br><br>(Removed from Contra Costa County Superior Court Case No. C23-01283)<br><br>**NOTICE OF REMOVAL OF CIVIL ACTION TO THE UNITED STATES DISTRICT COURT**<br><br>[*Filed concurrently with Declaration of Cecilia Brazie; Declaration of M. Ryan Pinkston; Civil Case Cover Sheet*] |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

**PLEASE TAKE NOTICE** that Defendant Bell-Carter Foods, LLC ("BCF") hereby removes the above-captioned action from the Superior Court of the State of California, County of Contra Costa, to the United States District Court for the Northern District of California, asserting original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) (the Class Action Fairness Act of 2005 ("CAFA")) and 28 U.S.C. § 1331 and removal jurisdiction pursuant to 28 U.S.C. §§1441(a), 1446, and 1453. In support of removal, BCF states as follows:

## I. PLEADINGS, PROCESSES, AND OTHERS

1. On May 30, 2023, Plaintiff Kenneth Durham ("Plaintiff") filed the putative class action complaint attached hereto ("Complaint" or "Compl.") in the Superior Court of California, County of Contra Costa. True and correct copies of the Complaint and related process, pleadings, and orders to date are attached hereto as **Exhibit A**. The state court action is styled as *Kenneth Durham, individually and on behalf of all others similarly situated v. Bell-Carter Group, Inc. and Bell-Carter Foods, LLC d/b/a Bell-Carter Foods*, Case No. C23-01283.[1]

2. In the Complaint, Plaintiff purports to allege seven causes of action: (1) negligence; (2) invasion of privacy; (3) breach of implied contract; (4) violation of California's Unfair Competition Law; (5) unjust enrichment; (6) violation of the California Consumer Records Act ("CCRA"); and (7) violation of the California Consumer Privacy Act ("CCPA"). (*See* Compl., at ¶¶ 97-171.) With respect to the first, third, fourth, and fifth causes of action, Plaintiff hopes to certify a nationwide class consisting of "[a]ll individuals residing in the United States whose PII [(personally identifiable information)] was compromised in the Bell-Carter Data Breach[,] including all those who received notice of the breach." (*Id.* at ¶ 79.) With respect to the second, sixth, and seventh causes of action, Plaintiff hopes to certify a "California subclass" consisting of "[a]ll individuals residing in California, or who resided in California as of September 13, 2022, whose PII was compromised in the Bell-Carter Data Breach who received notice of the breach." (*Id.* at ¶ 79.)

## II. RELEVANT BACKGROUND[2]

3. BCF is the largest table olive producer in the United States and the second largest in the world. (*Id.* at ¶ 16.)

4. According to the Complaint, in the ordinary course of its business, BCF accumulates sensitive personally identifiable information ("PII") from its employees and retains the PII of former employees for years after the employment relationship is terminated. (*Id.* at ¶¶ 17-18.)

---

[1] Per an agreement between Plaintiff and Bell-Carter Group, Inc., Plaintiff has filed an uncontested motion to dismiss Bell-Carter Group, Inc., which motion is presently set for hearing before the state court on September 21, 2023.
[2] This background is taken from the allegations in Plaintiff's Complaint and is recited merely for context. BCF does not admit the truth of Plaintiff's allegations.

5.     Plaintiff alleges that he is a former employee of "Bell-Carter" and that, "[a]s a condition of employment with Bell-Carter," he provided "Bell-Carter" with certain of his PII, "including but not limited to his name, Social Security Number, phone number, and personal mailing address "as a condition of employment with Bell-Carter." (*Id.* at ¶¶ 22-23; *see also id.* at ¶ 28 (alleging PII at issue includes names, personal mailing addresses, phone numbers, Social Security numbers, and salary information).) He also alleges, "[o]n information and belief," that "Bell-Carter" collects and maintains employees' unencrypted PII in its computer systems." (*Id.* at ¶ 24.)

6.     Plaintiff further alleges that at some time between September 7, 2022 and September 13, 2022, BCF suffered an attack on its computer network. (*Id*. at ¶ 1.) Specifically, Plaintiff contends that the attackers first accessed BCF's network or about September 7, 2022, and that the intrusion was not detected until September 13, 2022. (*Id*. at ¶ 2.)

7.     Plaintiff asserts that BCF conducted an internal investigation and "learned cybercriminals gained unauthorized access to current and former employee's [PII]." (*Id.* at ¶ 2.) The Complaint also alleges that on January 31, 2023, BCF notified Plaintiff and other putative class members about the cyber incident, but that Plaintiff did not receive such notice until April 2023. (*Id.* at ¶ 29.)

8.     Plaintiff filed his Complaint on May 30, 2023, and alleges, individually and on behalf of putative class members, that the purported theft of his and others' PII has harmed them in a variety of ways. (*See, e.g.*, *id.* at ¶¶ 33-35, 54-63, 70-72.)

## III.   TIMELINESS OF REMOVAL

9.     Plaintiff contends that BCF was served with the Complaint on July 10, 2023, by substitute service upon Mr. Tim Carter, followed by service by U.S. mail on July 11, 2023. (*See* Ex. A, at 38, 46 (Proof of Service of Summons, Declaration of Mailing).) With respect to BCF, Mr. Carter is not its registered agent, president, chief executive officer, other head, vice president, secretary or assistant secretary, treasurer or assistant treasurer, controller, chief financial officer, general manager, or personal authorized by BCF to receive service of process, nor is he an individual "apparently in charge at the office or usual place of business" of BCF. (*See* Declaration of Cecilia Brazie, dated August 21, 2023 ("Brazie Decl."), at ¶ 5.) Thus, to date, BCF has not been formally served with process.[3]

---

[3] BCF is not contesting service and agrees to waive the requirement of formal service of process.

10. Assuming *arguendo* the validity of service upon BCF by way of substitute service upon Mr. Carter on July 10, 2023, and mailing on July 11, 2023, service is considered complete on the tenth day after mailing. *See* Cal. Civ. Proc. Code § 415.20(a). As such, service, had it been effective, would be considered complete as of July 21, 2023. A notice of removal is timely if filed within 30 days of service of the complaint. *See* 28 U.S.C. § 1446(a); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 353-56 (1999) (removal period begins when defendant is formally served).

11. The thirtieth day after July 21, 2023, fell on Sunday, August 20, 2023. Pursuant to Federal Rule of Civil Procedure 6(a)(1)(C), when a period of time is calculated in days and a deadline falls on a Saturday, Sunday, or legal holiday, the deadline is extended until the end of the next business day. Accordingly, BCF's deadline to file a notice of removal is August 21, 2023, and this notice is timely filed. *See, e.g.*, *Allen v. Toyota Motor Credit Corp.*, No. 19-cv-03062, 2019 U.S. Dist. LEXIS 234129, at *4 (N.D. Cal. Aug. 1, 2019) (removal deadline on weekend extended to next business day); *cf. Barroso v. Gonzales*, 429 F.3d 1195, 1202 (9th Cir. 2005) (extending similar thirty-day filing deadline falling on a Saturday to next business day).

**IV.   ORIGINAL JURISDICTION IN THIS COURT**

12. As the Ninth Circuit has recognized, "CAFA 'significantly expanded federal jurisdiction in diversity class actions.'" *Jauregui v. Roadrunner Transp. Servs.*, 28 F.4th 989, 992 (9th Cir. 2022) (quoting *Lewis v. Verizon Communs., Inc.*, 627 F3d 395, 398 (9th Cir. 2010)). Further, as the Supreme Court has advised, unlike in ordinary removal scenarios, "no antiremoval presumption attends cases invoking CAFA." *Id.* at 992-93 (quoting *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014) (CAFA to be read broadly, with strong preference in favor of proper removal)).

13. As explained below, this Court has original jurisdiction over this putative class action both pursuant to CAFA and also on account of the federal questions raised in Plaintiff's Complaint. *See* 28 U.S.C. §§ 1331, 1332(d)(2)(A).

**A.   CAFA Provides This Court With Original Jurisdiction.**

14. Pursuant to CAFA, this Court has original jurisdiction over a civil action in which the aggregate value of the claims of putative class members exceeds $5,000,000, exclusive of interest and costs, and that is a class action in which: (1) the number of putative class members is not less than 100;

1  and (2) at least one putative class member is a citizen of a state different from that of at least one
2  defendant. *See* 28 U.S.C. §§ 1332(d)(2)(A), (d)(5)(B), (d)(6). Here, each of these requirements is
3  plainly satisfied.

### 1. This action involves more than 100 putative class members.

15. Plaintiff's Complaint purports to assert causes of action on behalf of both a nationwide class and also a subclass of individuals residing in California. (*See* Compl., at ¶ 79.) Plaintiff alleges "that the proposed [nationwide] Class and [California] Subclass each include[] at least thousands of individuals who have been damaged by Defendant's conduct as alleged herein." (*Id.* at ¶ 83).

16. BCF and its counsel have ascertained from a review of BCF's records that, pursuant to the allegations in Plaintiff's Complaint, at least 2,000, and perhaps as many as approximately 2,300, current and former employees and their dependents constitute potentially affected persons. (*See* Brazie Decl., at ¶ 6.) Stated differently, although BCF denies that the PII of any such current and former employees and their dependents was "compromised," at least 2,000 such individuals fall within Plaintiff's putative class definitions and allegations regarding a third party's unauthorized access to unencrypted PII in BCF's computer systems. (*See id.*) Additionally, in a cautious and conservative approach, BCF sent notices regarding the alleged cyber incident to 2,013 current and former employees and their dependents. (*See id.*)

17. Accordingly, the number of putative class members plainly is "not less than 100."

### 2. The parties are sufficiently diverse.

18. CAFA requires *minimal* diversity for the purposes of establishing federal jurisdiction and can be satisfied if "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). This requirement may be satisfied by either unnamed or named members of a proposed or certified class. 28 U.S.C. § 1332(d)(1)(D).

19. For CAFA's purposes, a limited liability company, such as BCF here, is "deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10); *see also Davis v. HSBC Bank Nev.*, 557 F.3d 1026, 1032 n.13 (9th Cir. 2009) (recognizing CAFA dissolved traditional rule that unincorporated association shares citizenship of its members for diversity purposes). BCF is organized under the law of California and

1  also has its principal place of business in California.  (*See* Brazie Decl., at ¶ 3; *see also* Complaint, at

2  ¶ 13.)  Thus, BCF is a citizen of the State of California for diversity purposes under CAFA.

3        20.     As for individuals, such as Plaintiff and the putative class members, a natural person must

4  first be a citizen of the United States in order to be a citizen of a state.  *See Kanter v. Warner-Lambert*

5  *Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (citing *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826,

6  828 (1989)).  State citizenship is "then determined by her state of domicile," which is "her permanent

7  home, where she resides with the intention to remain or to which she intends to return."  *Id.* (citing *Lew*

8  *v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986)).  Plaintiff is a natural person and citizen of California.  (*See*

9  Compl., at ¶ 12.)  Accordingly, Plaintiff and BCF are not of diverse citizenship.

10        21.     However, because sufficient diversity of citizenship is present if "any member of a class

11  of plaintiffs is a citizen of a State different from any defendant," 28 U.S.C. § 1332(d)(2)(A), a removing

12  defendant such as BCF need only show a "reasonable probability" that at least one putative class

13  member's citizenship differs from that of any defendant.  *See, e.g.*, *Blockbuster, Inc. v. Galeno*, 472 F.3d

14  53, 59 (2d Cir. 2006); *Abrego v. Dow Chem. Co.*, 443 F.3d 676, 683 (9th Cir. 2006) (holding diversity

15  must be established by "preponderance of the evidence") (citing *Sanchez v. Monumental Life Ins. Co.*,

16  102 F.3d 398, 404 (9th Cir. 1996)).

17        22.     Here, in his Complaint, Plaintiff seeks to certify both a nationwide class and also a

18  separate subclass consisting only of individuals residing in California.  (*See* Complaint, at ¶ 79.)

19  Plaintiff is correct that various putative class members reside in the United States, but outside California.

20  As examples, from a review of BCF's business records, BCF and its counsel are aware of six specific

21  putative class members who are United States citizens, who are current employees, who are potentially

22  affected persons based upon the allegations in Plaintiff's Complaint, and who reside in Florida,

23  Montana, Indiana, Wisconsin, Ohio, and Massachusetts, respectively.  (*See* Brazie Decl., at ¶ 7.)  It is

24  also highly likely that other current employees, as well as past employees and also dependents of either

25  group, reside in states other than California.  (*See id.* at ¶ 7.)

26        23.     As the Supreme Court has held, addresses indicating out-of-state residency present a

27  rebuttable presumption of out-of-state citizenship.  *See Dist. of Columbia v. Murphy*, 314 U.S. 441, 455

28  (1941) ("The place where a man lives is properly taken to be his domicile until facts adduced establish

the contrary."); *Ennis v. Smith*, 55 U.S. (14 How.) 400, 423 (1953).  Here, as noted above, BCF is aware from its business records that multiple putative class members reside in states other than California and believes that such individuals intend to remain domiciled in such non-California states.  (*See* Brazie Decl., at ¶ 8.)  For example, the specific putative class member who resides in Indiana has resided at the same physical address for 28 years, and the specific putative class member who resides in Massachusetts has resided at the same physical address for 9 years.  (*See id.* at ¶ 8.)  This evidence is more than sufficient to show that it is more likely than not that at least one putative class member is a citizen of a state other than California.

24.     As a result, minimal diversity is present here, and removal under CAFA is appropriate.

### 3.     CAFA's amount-in-controversy requirement is satisfied.

25.     Jurisdiction under CAFA also requires that the amount in controversy exceed $5,000,000, exclusive of interest and costs.  *See* 28 U.S.C. § 1332(d)(2).  Importantly, "[t]he amount in controversy is simply an estimate of the total amount *in dispute*, not a prospective assessment of defendant's liability." *Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) (emphasis added) (citing *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008)).  A defendant's computation of the amount placed in controversy is by no means an admission of liability for such an amount.  *See id.* (acknowledging impropriety of district court essentially demanding defendant concede liability for entire amount); *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020) ("amount at stake" refers to *possible* liability, not likely or probable).[4]

26.     A removing party's burden "is not daunting, as courts recognize that under this standard, a removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008) (internal quotations omitted).  A defendant need only make a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold," *Dart Cherokee*, 574 U.S. at 89, and a defendant may make reasonable assumptions in calculating the disputed amount.  *Jauregui*, 28 F.4th at 993.  If the amount is contested, a removing defendant carries its burden by establishing the requisite amount in controversy by a

---

[4] To avoid all doubt, BCF disputes Plaintiff's allegations and denies any liability whatsoever.

preponderance of the evidence. *See id.* at 992; *Brunts v. Walmart, Inc.*, 68 F.4th 1091, 1094 (8th Cir. 2023).

27. To calculate the amount in controversy, Plaintiff's allegations in the Complaint are accepted as true. *See, e.g.*, *Sanchez*, 102 F.3d at 402; *Cain v. Harford Life & Accident Ins. Co.*, 890 F. Supp. 2d 1246, 1249 (C.D. Cal. 2012) ("In measuring the amount in controversy, a court must assume that the allegations in the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint"). It "encompasses all relief a court may grant . . . if the plaintiff is victorious." *Chavez*, 888 F.3d 413, 415 (9th Cir. 2018); *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) (amount in controversy reflects maximum recovery plaintiff could reasonably recover).

28. The calculated amount may include "damages (compensatory, punitive, or otherwise) and the cost of complying with an injunction, as well as attorneys' fees awarded under fee shifting statutes." *Chavez*, 888 F.3d at 416 (quoting *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648-49 (9th Cir. 2016)). Furthermore, under CAFA, the claims of individual putative class members are aggregated. *See* 28 U.S.C. § 1332(d)(6).

29. Here, Plaintiff has not quantified in his Complaint the damages he seeks individually or on behalf of the two putative classes. But, across all seven causes of his causes of action in the Complaint, Plaintiff alleges a veritable smorgasbord of harms that he and the putative class members have suffered or will suffer. Accordingly, for the reasons that follow, BCF submits that the requisite amount in controversy required under CAFA is established by Plaintiff's allegations.

### a. Statutory Damages under CCPA

30. Perhaps the easiest calculation relates to Plaintiff's alleged entitlement to statutory damages with respect to the CCPA. (*See* Complaint, at ¶¶ 84.m., 169.)[5] Under the CCPA, an individual may "recover damages in an amount . . . not greater than seven hundred and fifty ($750) [dollars] per consumer per incident or actual damages, whichever is greater." Cal. Civ. Code § 1798.150(a)(1)(A).

---

[5] Plaintiff expressly alleges his intent to amend his Complaint in order to seek statutory damages pursuant to the CCPA, and as such, the Court may consider such amount when considering removal jurisdiction. *See Std. Fire Ins. Co. v. Knowles*, 568 U.S. 588, 594 (2013) (rejecting exaltation of form over substance when considering calculation of amount in controversy).

Assuming only one alleged "incident" here, Plaintiff's statutory damages for at least 2,000 putative class members total $1,500,000.00 ($750 x 2,000). It is not readily apparent from Plaintiff's Complaint precisely how many "incidents" he contends occurred, but of course, the total amount of statutory damages in controversy would double, triple, and so on, depending on how many "incidents" Plaintiff purports to allege.

### b. Alleged "Actual" Damages

31. As for "actual" damages, Plaintiff alleges, among other various harms: (a) damage to and diminution in the value of PII, (*see* Complaint, at ¶¶ 55, 63); (b) "anxiety, sleep disruption, stress, fear, and frustration," (*id.* at ¶ 57); (c) "present and continuing risk of fraud, identity theft, and misuse" of PII, (*id.* at ¶ 58); (d) "[o]ut-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud," (*id.* at ¶ 63.d.); (e) "[l]ost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences," (*id.* at ¶ 63.e.); and (f) "[d]elay in receipt of tax refund monies," (*id.* at ¶ 63.f.).[6]

### i. Diminution of PII

32. With respect to damage to and diminution in the value of PII, Plaintiff alleges that the value of an individual's PII "can be worth up to $1,000." (*Id.* at ¶ 64.) In other words, according to Plaintiff, the loss of, or diminution in, value of the PII at issue may be worth as much as $1,000 per individual. Accepting this allegation as true, the total diminution in value alleged by Plaintiff totals $2,000,000.00 ($1,000 x 2,000).

### ii. Emotional Distress/Nonecomonomic Damages

33. As for Plaintiff's allegations of anxiety, stress, and other types of emotional harm emanating from the alleged breach here, courts often look to verdicts in other cases to determine the amount in controversy related to emotional distress damages. *See Cain v. Hartford Life & Acc. Ins. Co.*, 890 F. Supp. 2d 1246, 1250 (C.D. Cal. 2012). BCF has not located a decision regarding emotional distress damages in an alleged data breach, but emotional distress damages for victims of identity theft

---

[6] Under the CCPA, Plaintiff would only be entitled to recover the value of these alleged harms if they exceed statutory damages. *See* Cal. Civ. Code ¶ 1798.150(a)(1). However, Plaintiff incorporates by reference each of these harms into all of his other alleged causes of action, thereby raising the specter that recovery of such actual damages is permitted on some other basis.

9
NOTICE OF REMOVAL OF CIVIL ACTION TO THE UNITED STATES DISTRICT COURT

(the same type of factual circumstance underpinning Plaintiff's alleged harms here) have been as high as $150,000 and $315,000. *See Drew v. Equifax Info. Servs., LLC*, No. C 07-00726, 2010 U.S. Dist. LEXIS 131643, at *27-30 (N.D. Cal. Dec. 3, 2010) (upholding $315,000 emotional distress damages); *Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495, 507 (4th Cir. 2007) (awarding $150,000 for mental anguish); *Kim v. BMW Fin. Servs. NA*, 702 Fed. App'x 561 (9th Cir. 2017) (affirming appeal from, *inter alia*, jury award of $150,000 in noneconomic damages following identity theft); *see also Aguirre v. Cap. One Bank USA N.A.*, No. 23-cv-00128, 2023 U.S. Dist. LEXIS 105188, at * 8-9 (C.D. Cal. June 15, 2023) (considering *Drew* and *Sloane* in determining emotional distress damages for amount in controversy in data breach case). Although BCF denies that Plaintiff is entitled to any emotional distress damages here (and certainly not in the amount awarded in these other cases), Plaintiff's Complaint, taken as true for the instant purpose, alleges such damages. Even an award of merely ten percent (10%) of the amounts awarded in *Drew*, *Sloane*, or *Kim* would result in emotional distress damages totaling $6,300,000 ($31,500 x 2,000) or $3,000,000 ($15,000 x 2,000).

### iii.   Out-of-Pocket Costs/Credit Monitoring

34.   Plaintiff's allegations regarding entitlement to "out-of-pocket costs" are unaccompanied by any statement of what such costs may be, (*see* Complaint, at ¶ 63.d.), but they appear to overlap, at least in part, with Plaintiff's contention that he and putative class members "will also have to protect against identity theft for years to come." (Complaint, at ¶ 109 (thereafter incorporated by reference in every cause of action).) Numerous courts have considered the cost of identity theft protection and credit monitoring in evaluating CAFA jurisdiction in data breach cases. *See, e.g.*, *Porras v. Sprouts Farmers Market, LLC*, No. CV 16-1005, 2016 U.S. Dist. LEXIS 96805, at *7-9 (C.D. Cal. July 25, 2016); *Fielder v. Penn Station Inc.*, No. 12CV2166, 2013 U.S. Dist. LEXIS 63573, at *6 (N.D. Ohio May 3, 2013); *McLoughlin v. People's United Bank, Inc.*, 586 F. Supp. 2d 70, 73 (D. Conn. 2008).

35.   Costs for credit monitoring for the three national credit-monitoring bureaus range from between $9.95 to $19.95 per month (Equifax), $24.99 per month (Experian), and $29.95 per month (TransUnion). (*See* Declaration of M. Ryan Pinkston, dated August 21, 2023, at ¶ 2.)[7] Based on these

---

[7] Equifax, https://www.equifax.com/personal/ (last visited August 21, 2023); Experian, https://www.experian.com/protection/compare-identity-theft-products/ (last visited August 21, 2023); TransUnion, https://www.transunion.com/credit-monitoring (last visited August 21, 2023).

quoted costs, Plaintiff's alleged damages for credit monitoring for "*years*" to come, (*see* Complaint, at ¶¶ 109, 130), would be anywhere from $477,600 ($9.95 x 24 x 2,000) to as much as $1,437,600 ($29.95 x 24 x 2,000), and those amounts ignore costs already incurred and only assume credit monitoring for two years into the future. Adding just a third year balloons those costs to $716,400 ($9.95 x 36 x 2,000) to as much as $2,156,400 ($29.95 x 36 x 2,000).

### iv.     Lost Time/Wages

36.     Plaintiff's Complaint alleges "lost time" and "lost wages" as a result of the alleged data breach. (*See* Complaint, at ¶ 63.) To place a value on such alleged harms, at least once court has found reasonable the use of the state minimum wage and an estimate of time to be spent by each putative class member. *See Copple v. Arthur J. Gallegher*, No. C22-1066, 2022 U.S. Dist. LEXIS 147729, at *15, 18 (W.D. Wash. Aug. 2, 2022). In California, the minimum wage for 2023 is $15.50 per hour. Cal. Lab. Code § 1197; State of California Department of Industrial Relations, Minimum Wage Frequently Asked Questions, *available at* https://www.dir.ca.gov/dlse/faq_minimumwage.htm.

37.     Plaintiff does not quantify in his Complaint the alleged "lost time" or "lost wages," but he does allege that he "has and will spend considerable time and effort monitoring his accounts to protect himself from identity theft." (Complaint, at ¶ 57.) Courts have approved settlements in data breach cases that include up to ten hours of "lost time." *See, e.g.*, *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-CIV-61275, 2023 U.S. Dist. LEXIS 117355, at *8-9 (S.D. Fla. July 8, 2023); *Yvonne Mart Fox v. Iowa Health Sys.*, No. 18-cv-00327, 2021 U.S. Dist. LEXIS 40640, at *12 (W.D. Wis. March 4, 2021). Using this figure as a baseline, Plaintiff's alleged damages on behalf of himself and the putative class members for "lost wages" totals $300,000 ($15.50 x 10 x 2,000).

### c.     Punitive Damages

38.     Plaintiff also alleges that he and the putative class members are each entitled to punitive damages. (*See, e.g.*, Complaint, at ¶ 111.) As with emotional distress damages, awards in other cases are an important factor in assessing the amount of punitive damages in controversy. *See, e.g.*, *Surber v. Reliance Nat'l Indem. Co.*, 110 F. Supp. 2d 1227, 1232 (N.D. Cal. 2000); *Plata v. Target Corp.*, No. CV 16-5496, 2016 U.S. Dist. LEXIS 147728, at *9-10 (C.D. Cal. Oct. 25, 2016). In *Drew*, the court

1  awarded a plaintiff $700,000 in punitive damages for identity theft. 2010 U.S. Dist. LEXIS 131643, at
2  *25-26, 30.

3        39.     The Supreme Court has noted that application of a single-digit multiplier to actual
4  damages in order to calculate punitive damages is constitutionally permissible (and recognized that a
5  bigger multiplier may be warranted in appropriate cases). *State Farm Mut. Auto. Ins. Co. v. Campbell*,
6  538 U.S. 408, 425 (2003). Here, with Plaintiff's allegations of actual damages approaching an upper
7  limit of $10,756,400 ($2 million in lost value of PII, $6.3 million in emotional distress, $2.1564 million
8  in credit monitoring, $300,000 in lost wages), punitive damages alone, as alleged, could exceed CAFA's
9  required threshold for the amount in controversy.

### d.   Costs of Injunctive Relief

11        40.     Plaintiff also requests injunctive relief, and as noted above, the costs of compliance with
12  an injunction may be included in calculating the amount in controversy. *See Chavez*, 888 F.3d at 416
13  (quotation omitted). Because the terms of Plaintiff's requested injunction are unknown, BCF cannot
14  quantify with any specificity the costs of compliance, but such costs would only further exceed the
15  amount-in-controversy requirement here.

### e.   Attorneys' Fees

17        41.     In addition to all the various amounts set forth above, Plaintiff's Complaint also seeks an
18  award of attorneys' fees. (*See* Complaint, at 32.) In the class action context, courts have found that
19  25% of the aggregate amount in controversy is a benchmark for attorneys' fees awards under the
20  "percentage of fund" calculation and courts may depart from this benchmark when warranted. *See*
21  *Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d
22  1011, 1029 (9th Cir. 1998)); *Campbell v. VitranExp., Inc.*, 471 F. App'x 646, 649 (9th Cir. 2012)
23  (attorneys' fees are appropriately included in determining amount in controversy under CAFA); *Powers*
24  *v. Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000); *Wren v. RGIS Inventory Specialists*, No.
25  C-06-05778, 2011 U.S. Dist. LEXIS 38667, at *83 (N.D. Cal. Apr. 1, 2011) (finding ample support for
26  adjusting the 25% presumptive benchmark upward and found that plaintiffs' request for attorneys' fees
27  in the amount of 42% of the total settlement payment was appropriate and reasonable in the case);
28  *Cicero v. DirecTV, Inc.*, No. CV 07-1182, 2010 U.S. Dist. LEXIS 86920, at *17-18 (C.D. Cal. July 27,

2010) (finding attorneys' fees in the amount of 30% of the total gross settlement amount to be reasonable).

42. Utilizing the damages calculations set forth above and accepting all of Plaintiff's allegations as true, attorneys' fees could exceed $2.5 million (25% of approximately $10 million in actual damages). Put another way, based on all of the foregoing, including Plaintiff's demand for attorneys' fees, it is clear that CAFA's $5 million threshold requirement is satisfied.[8]

### B. The Court Also Has Federal Question Jurisdiction.

43. In his Complaint, Plaintiff alleges as a predicate act for his various causes of action that BCF has failed to comply with guidelines issued by the Federal Trade Commission and has violated Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45. (Complaint, at ¶¶ 73-78, 104.) Specifically, Plaintiff requests in this action a determination that the Federal Trade Commission's guidelines and the Federal Trade Commission Act created a duty on the part of BCF to take certain measures to safeguard individuals' PII and that BCF breached such duty. (*See id.*) Plaintiff then incorporates these allegations into every one of his causes of action. By doing so, Plaintiff has alleged a "substantial federal question" that empowers this Court with federal question jurisdiction over this action. *See, e.g.*, *Cent. Valley Med. Grp., Inc. v. Indep. Physician Assocs. Med. Grp., Inc.*, No. , 2019 U.S. Dist. LEXIS 100265, at *9-16 (E.D. Cal. June 14, 2019) (pleading violations of federal policy and federal statute as predicate act for state-law cause of action raises federal question for jurisdictional purposes). Accordingly, this Court should exercise jurisdiction over this action, and removal is proper.

## V. VENUE

44. Venue lies in this Court pursuant to 28 U.S.C. §§ 1441, 1446(a), and 84(a). This action originally was brought in the Superior Court of the State of California, County of Contra Costa, which is in the district over which this Court presides.

---

[8] Plaintiff also alleges that he and the putative class are entitled to "restitution of all monies paid to or received by [BCF]; [and] disgorgement of all profits accruing to [BCF] because of its unfair and improper business practices." (Complaint, at ¶ 148.) Plaintiff further alleges that BCF should "disgorge into a common fund for the benefit of Plaintiff and members of the Class all unlawful or inequitable proceeds received by it because of its misconduct and Data Breach." (*Id.* at 154.) Because BCF does not understand from these allegations what Plaintiff seeks, they have not been analyzed. Suffice it to say, however, that such amounts push the amount in controversy even farther beyond the threshold requirement.

**VI.   NOTICE OF REMOVAL**

45.   Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this Notice of Removal will be promptly served on Plaintiff and, together with a copy of the Notice of Removal, will be filed with the Clerk of the Superior Court of the State of California, County of Contra Costa.  BCF will promptly file with this Court a proof of service reflecting the foregoing.

**VII.   PRAYER FOR REMOVAL**

Based on the foregoing, BCF prays that the civil action commenced by Plaintiff be removed from the Superior Court of the State of California, County of Contra Costa, to the United States District Court for the Northern District of California.

DATED: August 21, 2023                                         SEYFARTH SHAW LLP


By:  /s/ M. Ryan Pinkston
M. Ryan Pinkston
Attorneys for Defendant
Bell-Carter Foods, LLC

97305652v.4